UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

SUSAN GAGLIANO                                                                    PLAINTIFF

v.                                    No. 3:16-CV-00216-JTR

NANCY A. BERRYHILL,
Acting Commissioner,
Social Security Administration                                                    DEFENDANT

# ORDER REMANDING TO THE COMMISSIONER

Susan Gagliano ("Gagliano") applied for social security disability benefits with an alleged disability onset date of January 16, 2014. (R. at 69). The administrative law judge ("ALJ") denied her application after a hearing. (R. at 25). The Appeals Council denied her request for review. (R. at 1). The ALJ's decision now stands as the Commissioner's final decision, and Gagliano has requested judicial review.[1]

For the reasons stated below, this Court reverses and remands the Commissioner's decision.

## I.     The Commissioner's Decision

The ALJ found that Gagliano had the severe impairments of depression, anxiety, obesity, bilateral bunions and plantar fasciitis, sleep apnea, fibromyalgia, degenerative disk disease of the lumber spine, degenerative disease of the knees, and

---

[1]The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

1

neuropathy of the upper and lower extremities. (R. at 15). Based on those limitations, the ALJ determined that Gagliano had the residual functional capacity ("RFC") to perform sedentary work except that she could only occasionally stoop, crouch, crawl, and kneel, and could only perform work: where interpersonal contact is incidental to the work performed, with incidental defined as interpersonal contact requiring a limited degree of interaction such as meeting and greeting the public, answering simple questions, accepting payment and making change; where complexity of tasks can be learned by demonstration or repetition, within thirty days, with few variables and little judgment; where the supervision required is simple, direct, and concrete; and where rapid, repetitive flexion or extension of the wrists bilaterally is not involved. (R. at 17–18).

In light of her RFC, the ALJ concluded that Gagliano could not return to her past relevant work. (R. at 23). However, after hearing testimony from a vocational expert, the ALJ concluded that Gagliano could perform other jobs available in the national economy, such as document reviewer and circuit board inspector. (R. at 24). Therefore, the ALJ held that Gagliano was not disabled. (R. at 25).

## II.     Discussion

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see*

*also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

Gagliano argues that the ALJ impermissibly drew his own inferences from the record and failed to properly develop the record. She also maintains that the ALJ improperly assessed her impairments. Because the Court agrees with Gagliano's first argument, it is not necessary to reach her second point.

Gagliano cites numerous occasions where the ALJ failed to account for portions of the medical record or simply made erroneous statements about the medical evidence.

The ALJ noted that progress notes from January 17, 2014 "show no significant change or deterioration in the claimant's condition." (R. at 19). The ALJ suggested that this showed that Gagliano did not become disabled at her alleged onset date. (R. at 19). Nerve conduction studies showed evidence of sensory polyneuropathy of the lower extremities in December 2013. (R. at 384–85). Gagliano was also noted to

3

have increased myalgias in the arms and legs in December 2013. (R. at 592). Gagliano first discussed fibromyalgia with a doctor on January 13, 2014. (R. at 586). The ALJ seemingly disregarded these facts in determining whether Gagliano was disabled. The Commissioner does not dispute that the ALJ erred in this analysis, but contends that the error was harmless. The Court cannot agree, especially in light of several other errors committed by the ALJ.

For example, the ALJ stated that progress notes from July and August 2014 were "relatively unchanged." (R. at 20.) However, these notes contain changes to medications and additional diagnoses. (R. at 662–67). Furthermore, the ALJ mischaracterized tizanidine, fluoxetine, and alprazolam as "habit-forming narcotics." (R. at 20). Such language indicates that the ALJ based his credibility assessment, in part, on the perception that Gagliano was a user of habit-forming narcotics, an erroneous conclusion that was prejudicial to Gagliano.

The ALJ also discounted Gagliano's description of her pain from fibromyalgia as an "eight on a scale of ten most days" because the ALJ believed she was in "no acute distress" and her x-rays were unremarkable. (R. at 21, 735-38). These conclusions suggest the ALJ has an incomplete or erroneous understanding of fibromyalgia. *The Merck Manual* indicates that diagnosis of fibromyalgia is based upon pain at specific tender points and a history of widespread pain. *The Merck Manual*, 376 (Robert S. Porter *et al*., eds., 19th ed. 2011). No confirming diagnostic

tests exist, and the Eighth Circuit has reversed where an ALJ found that fibromyalgia was not substantiated by objective medical testing. *Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir. 2005). In this case, the physician reported that Gagliano had 18/18 tender points. (R. at 737). Furthermore, as Gagliano observes, the phrase "no acute distress" does not indicate that Gagliano was not in pain. The ALJ's assessment of her pain is thus not substantiated by the evidence.

"[I]t is well settled that it is the ALJ's duty to develop the record fully and fairly. This duty includes the responsibility of ensuring that the record includes evidence from a treating physician, or at least an examining physician, addressing the particular impairments at issue." *Strongson v. Barnhart*, 361 F.3d 1066, 1071-72 (8th Cir. 2004). This record contains no opinion from a treating or examining physician regarding Gagliano's limitations. The treatment records do not clearly establish limitations related to Gagliano's ability to work. The ALJ's assessments are thus based on his own interpretation of the medical records, and this is not permissible. *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). Accordingly, the case must be reversed and remanded for further development of the record.

### III. Conclusion

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial

evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477. After reviewing the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing, the Court concludes that the record as a whole does not contain ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). On remand, the ALJ should further develop the record by recontacting Gagliano's treating physicians or ordering a consultative examination, if necessary.

    IT IS SO ORDERED this 28th day of June, 2017.

_____
UNITED STATES MAGISTRATE JUDGE